IN RE TREMAINE C.*
(AC 30083)

Beach, Robinson and Schaller, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued June 2—officially released October 13, 2009

*David J. Reich*, for the appellant (respondent father).

*Michael J. LaMonica*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman* and *Renee Bevacqua Bollier*, assistant attorneys general, for the appellee (petitioner).

*John Anthony Radziunas*, for the minor child.

*Opinion*

SCHALLER, J. The respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his minor son, Tremaine. On appeal, the respondent[1] claims that his constitutional due process rights to be present at trial and to confront witnesses were violated.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the respondent's appeal. Tremaine was born in June, 2006. The respondent was incarcerated at the time of Tremaine's birth, and the child was removed from the mother's care when he was born because he tested positive for cocaine. After

---

[1] The court also terminated the parental rights of the child's mother, who has filed a separate appeal from that judgment. See *In re Tremaine C.*, 117 Conn. App. 590, 980 A.2d 330 (2009). We therefore refer in this opinion to the respondent father as the respondent.

[2] The respondent also argues that his trial counsel's failure to preserve his claim regarding his constitutional due process rights to be present at trial and to confront witnesses amounted to ineffective assistance of counsel. Because we find no violation of a fundamental right after affording the respondent review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), he cannot demonstrate prejudice. See *In re Matthew S.*, 60 Conn. App. 127, 132, 758 A.2d 459 (2000) (showing of incompetence without showing of resulting prejudice does not amount to ineffective assistance of counsel). Accordingly, this claim has no merit.

Tremaine's birth, the respondent visited with him monthly[3] until the respondent was released from prison in November, 2006. He continued to visit consistently with Tremaine in December, 2006, and the first two weeks of January, 2007. The respondent's last visit with Tremaine was on January 8, 2007. After January 8, 2007, the respondent had no contact with Tremaine or with the department of children and families (department) concerning Tremaine's well-being.

On June 22, 2007, the petitioner, the commissioner of children and families, filed a termination of parental rights petition as to both parents.[4] The respondent properly was served with the termination of parental rights petition. On July 22, 2007, the respondent was defaulted for nonappearance.

On November 7, 2007, the hearing on the termination of parental rights petition commenced as to the mother. During the hearing, the court noted the respondent's absence from the proceedings, and the default was noted on the record. Lakesha Smith, a social worker for the department, testified that she had been unable to locate the respondent because, she believed, he was attempting to evade the authorities because of an outstanding arrest warrant for a violation of probation. Smith testified that in September, 2007, she checked the department of correction Internet site for information regarding the respondent's whereabouts, but the site indicated that the respondent was unaccounted for as an "absconder." Smith also testified that she then contacted the respondent's parole officer, who informed her that the respondent was on the run from authorities.

---

[3] The department of children and families transported Tremaine to visit the respondent in prison. The respondent did not, however, participate in any services or parenting classes during that time.

[4] The petition alleged, as grounds for the terminations, abandonment, failure to achieve sufficient rehabilitation and an absence of parent-child relationships.

Smith testified that after the respondent was released in November, 2006, on special probation, he was arrested in the summer of 2007 and did not report for his court appearance. Finally, Smith testified that she had checked the department of correction Internet site on November 6, 2007, and determined that the respondent was still "on the run."

Smith testified that after January 8, 2007, the respondent had not seen Tremaine, had not inquired of the department or Tremaine's foster parents for information about Tremaine, had not sent letters, cards or gifts and had not sent financial support. She also testified that the respondent participated in the substance abuse evaluation to which she referred him and attended his intake appointment at New Haven Family Alliance but that he did not return for parenting services. In addition, Smith testified that the department had not been permitted to check the home listed as the respondent's mailing address[5] to determine if it was an appropriate setting for Tremaine.

The hearing was continued to November 27, 2007, for additional testimony. On November 27, 2007, however, the hearing was continued again, this time to January 29, 2008, due to the mother's hospitalization.[6] On January 29, 2008, Smith testified that she had had no contact with the respondent since the November 7, 2007 hearing, that the respondent had made no inquiry to her office concerning the well-being of Tremaine and that she had not received any Christmas presents, cards or letters for Tremaine from the respondent. Smith also testified that the respondent had not provided any financial support for Tremaine since the November 7, 2007 hearing. The remainder of Smith's testimony on that

[5] Smith testified that the respondent listed his wife's residence as his home address.

[6] The mother was hospitalized in connection with the birth of another child, due in December, 2007.

date related to the petition to terminate the mother's parental rights. Lauralee Candelario, a substance abuse counselor, also testified on January 29, 2008, about the mother's substance abuse issues. During closing argument, the petitioner's counsel did not address the termination of the respondent's parental rights.

On February 14, 2008, the petitioner filed a motion to open the evidence because Smith had checked the department of correction Internet site on January 30, 2008, and discovered that the respondent had been incarcerated on or about January 18, 2008. On February 26, 2008, an attorney was appointed to represent the respondent. The respondent was provided with the transcripts of both the November 7, 2007 and January 29, 2008 proceedings. The court informed the respondent that he was free to call or recall any witness to the witness stand. On April 15, 2008, the court granted the petitioner's motion to open the evidence and was ready to proceed with the termination hearing. The respondent's attorney requested a continuance to prepare adequately. The court granted the continuance, and trial was scheduled to resume on May 19, 2008.

On May 19, 2008, the respondent called Smith for purposes of cross-examination. Smith testified that she had made efforts to contact the respondent prior to November 7, 2007. Specifically, she contacted the respondent's family members and his probation officer, and she sent letters to the respondent's home. Between November 7, 2007, and January 29, 2008, Smith continued to attempt to locate the respondent. She checked the department of correction Internet site twice a month. She tried checking the department of correction site on January 28, 2008, to locate the respondent, but the site was not functioning. The respondent never informed Smith that he was incarcerated in January, 2008. Smith discovered that the respondent was incarcerated when she checked the department of correction

Internet site again on January 30, 2008. On May 19, 2008, Smith also testified that although the respondent visited Tremaine in December, 2006, and January, 2007, he did not help care for Tremaine.

During closing arguments, the respondent's attorney argued for a new trial, but when questioned by the court, he withdrew the request. Instead, the respondent's attorney argued that the court should deny the petition for the termination of parental rights on the ground that the petitioner did not make reasonable efforts to locate the respondent.[7]

---

[7] On May 19, 2008, the following exchange occurred:

"[The Respondent's Counsel]: Well, I wasn't here last time. I can just make a brief statement, if that's all—

"The Court: All right.

"[The Respondent's Counsel]: Right. . . . I find it very interesting that . . . time elapsed between January 18 and January . . . 19, 2008, that there was only an effort made to locate my client the day before the second date of trial. If the efforts had been made prior to that, after the eighteenth, and the [Internet site] wasn't down, he would have been able to be present for the second day of trial. I know that he has been given the opportunity to cross-examine [Smith], but he still was not present and was not able to partake in the trial. Maybe things would have been a little different, I'm not sure. But I would ask that a new trial be set in this matter because my client was not present and that we start all over again.

"The Court: Is that in a written motion anywhere?

"[The Respondent's Counsel]: No, that's not in a motion.

"The Court: That's news to the court. I thought there was an agreement that we would reopen this case to allow any—

"[The Respondent's Counsel]: Which is what we—yeah.

"The Court: testimony. Why would we start all over again with a new trial?

"[The Respondent's Counsel]: Well, no, I'll—I'll withdraw that request.

"The Court: Oh.

"[The Respondent's Counsel]: What we did was, we reopened it to allow the testimony, and that was the agreement.

"The Court: You're just asking the court to deny the termination of parental rights petition?

"[The Respondent's Counsel]: Absolutely, because of this.

"The Court: Because—

"[The Respondent's Counsel]: Because my client was not present during the second—

"The Court: And, so—

"[The Respondent's Counsel]: day of trial.

"The Court: The argument is [that the department] did not—

"[The Respondent's Counsel]: Make—make the efforts to . . . enough efforts to locate my client—

On May 19, 2008, the court found that the petitioner had made reasonable efforts to locate the respondent. The fact that the petitioner did not discover until January 30, 2008, that the respondent had been incarcerated sometime around January 18, 2008, did not change the court's conclusion that the petitioner had made reasonable efforts to locate the respondent. Furthermore, the court found that the respondent evaded the petitioner's attempts to locate him, presumably because he feared reincarceration, and that the respondent could not be located by the petitioner because the respondent did not want to be found. The court terminated the respondent's parental rights after finding that he had abandoned Tremaine.[8]

The respondent's claim on appeal is that the court deprived him of his constitutional due process rights to be present at trial and to confront witnesses. Specifically, he claims that "he had a due process right to be at trial once he was apprehended and incarcerated and has the right to have a new trial even if [the department] and the court were unaware that he was incarcerated." We disagree.

Because the respondent did not preserve his claim at trial, he requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[9] and the plain error doctrine. See Practice Book § 60-5. Under *Golding*, a party "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following

---

"The Court: Reasonable efforts?

"[The Respondent's Counsel]: During that—reasonable efforts during the eleven day period.

"The Court: All right. So, that's—that is—

"[The Respondent's Counsel]: That is the crux to my argument.

"The Court: Your argument? All right."

[8] Given the court's finding that the respondent had abandoned Tremaine, it did not reach the alternative statutory grounds alleged by the petitioner.

[9] *Golding* review applies in civil as well as criminal cases. *Perricone* v. *Perricone*, 292 Conn. 187, 212 n.24, 972 A.2d 666 (2000).

conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [respondent's] claim will fail. The appellate tribunal is free, therefore, to respond to the [respondent's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 239–40.

In this case, there is an adequate record and a claim of constitutional magnitude implicating a fundamental right. "The right of a parent to raise his or her children has been recognized as a basic constitutional right. *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Lehrer* v. *Davis*, 214 Conn. 232, 236, 571 A.2d 691 (1990); *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 435, 446 A.2d 808 (1982); *State* v. *Anonymous*, 179 Conn. 155, 162–63, 425 A.2d 939 (1979)." *In re Alexander V.*, 25 Conn. App. 741, 743, 596 A.2d 934 (1991), aff'd, 223 Conn. 557, 613 A.2d 780 (1992). Thus, the first two *Golding* conditions are met, and we next consider whether a constitutional violation clearly exists and whether the respondent was clearly deprived of his right to a fair trial.

The respondent's claim fails under the third *Golding* prong because the constitutional violation does not clearly exist, and the respondent was not clearly deprived of a fair trial. "The United States Supreme Court in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), established a three part test to determine whether the actions of the court violated a party's right to procedural due process. The

three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements. . . . Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Citation omitted; internal quotation marks omitted.) *Foster* v. *Foster*, 84 Conn. App. 311, 319, 853 A.2d 588 (2004).

The respondent's interest in retaining his parental rights as to the child is a constitutionally protected interest. A petition to terminate parental rights threatens the respondent's constitutionally protected interest. Accordingly, the first factor of the *Mathews* balancing test weighs in favor of the respondent. See *In re Candids E.*, 111 Conn. App. 210, 216–17, 958 A.2d 229 (2008).

The respondent argues that the second factor of the balancing test is not applicable to the facts of this case because he does not ask this court to enforce *additional safeguards*, but, rather, he asks us to afford him the benefit of the safeguards already in place in our statutes and rules of practice.[10] The petitioner argues that the

---

[10] The respondent asserts that the court's proceeding in his absence was in direct contravention of the mandates of General Statutes §§ 45a-716 (b) (1) and 46b-135 (b), as well as the rules set out in Practice Book §§ 26-1 (h) (2) and 33a-7 (a) (1). These provisions support the respondent's argument that he was a legally necessary party with a right of confrontation. Those provisions, however, do not announce any requirement that the court or the petitioner repeatedly attempt to locate a properly served, nonappearing, defaulted respondent throughout a hearing on a petition for a termination of parental rights. The provisions also do not state a requirement that a new trial must be ordered when a nonappearing, defaulted respondent is incarcerated after the beginning of a hearing, makes no attempt to contact the court or any party and is later located by the petitioner.

respondent is in fact seeking additional safeguards, namely, a new trial. We agree with the petitioner that the respondent is seeking additional safeguards that are not provided by our statutes or rules of practice. See id., 217 (no violation of statutes, rules of practice or due process when hearing conducted in represented respondent's absence, rather than rendering of default judgment, because "the court required the petitioner to prove by clear and convincing evidence not only the ground for termination, but that it was in the child's best interest for the respondent's parental rights to be terminated").

We must, therefore, consider the risk of an erroneous deprivation of the respondent's interest, given the existing procedures, and the value, if any, of the additional safeguard of a new trial. In this case, the petitioner properly served the respondent with notice of the petition. After the respondent failed to appear and was defaulted, the petitioner, aware of the outstanding warrants for the respondent's arrest, continuously inquired at the department of correction Internet site to determine whether the respondent was incarcerated. When the petitioner learned that the respondent was incarcerated, she moved to open the evidence and requested that the respondent be appointed counsel. Additionally, the court opened the evidence, provided transcripts for the respondent's counsel, permitted a continuance to allow the respondent's counsel to meet with his client and to prepare for trial, and allowed the respondent to call or recall witnesses and to present evidence during the hearing. Finally, the court found that the petitioner proved by clear and convincing evidence the ground for termination and that it was in the child's best interest for the respondent's parental rights to be terminated.[11] Accordingly, the risk of an erroneous

[11] The respondent does not claim that the court's findings of fact were clearly erroneous or that its rulings, as to either the ground for termination or whether termination was in the child's best interest, were an abuse of discretion.

deprivation under these circumstances is very low. Furthermore, the value of a new trial would be minimal.[12] Other than the statement that he was not able to participate adequately in the hearing by having spontaneous input, the respondent has failed to articulate any support for his argument that a new trial would provide him with greater protection of his parental rights than the procedural protections with which he was afforded.

The respondent argues that the court was required to order a new trial in this case on the basis of our decision in *In re Jonathan P.*, 23 Conn. App. 207, 579 A.2d 587 (1990). In that case, we found that the respondent was entitled to a new hearing because his due process rights to be present at trial and to confront witnesses were violated when the court proceeded with the termination of parental rights hearing without the incarcerated respondent's presence when a writ of habeas corpus had been issued to enable the respondent to be in court that day. Id., 209–12.

The respondent's reliance on *In re Jonathan P.* is misplaced. The respondent's due process rights were violated in that case because the respondent, who was incarcerated, was prevented from participating in the termination of parental rights trial on the basis of state sanctioned action. Id., 213–14. In that case, the respondent had not been transported by the department of correction to court even though a habeas writ had been issued for him to be present that morning. Id., 213. In this case, even though the respondent was incarcerated, the state did not prevent him from appearing in court. There is no indication in the record that the court or

---

[12] Indeed, the respondent's attorney stated: "I know that [the respondent has] been given the opportunity to cross-examine this witness that testified today, but he still was not present and was not able to partake in the trial. *Maybe* things would have been a *little different, I'm not sure.*" (Emphasis added.)

the parties were aware that the respondent was incarcerated and no indication that the department of correction was aware that the respondent wanted to be transported to court for the hearing.

The present case is more analogous to *McDuffee* v. *McDuffee*, 39 Conn. App. 412, 664 A.2d 1164 (1995), in which the plaintiff challenged the court's denial of a continuance for a custody hearing because she was involved in a criminal matter in a different state. In *McDuffee*, we stated: "The plaintiff's claim that her due process rights were violated is without merit. She confuses her own inaction in failing to arrange to be present or to provide testimony at the hearing with an affirmative action by the trial court denying her the right to be present. This is a private custody dispute, and the court did nothing to prevent the plaintiff from appearing. The record is devoid of any indication that the plaintiff availed herself of any of the procedures that would have allowed her to provide evidence or to be present. We conclude, therefore, that the trial court did not violate the plaintiff's due process rights." Id., 416. Similarly, in this case, the respondent failed to notify any parties or the court of his incarceration, and, furthermore, there is no indication in the record that the respondent availed himself, either prior or subsequent to his incarceration, of any of the procedures that would have allowed him to be present for the termination of parental rights trial and to confront witnesses. There was no affirmative act by the court to deny the respondent the opportunity to be present at the termination proceedings. Furthermore, the record is clear that the respondent voluntarily chose not to be present for the termination proceedings, as evidenced by his (1) never contacting the petitioner after being served properly with notice of the termination proceedings, resulting in his being defaulted, and (2) missing

two scheduled trial dates during the termination proceedings while he was not incarcerated. Accordingly, the second factor of the *Mathews* balancing test weighs in favor of the petitioner.

The third factor of the *Mathews* balancing test concerns the government's interest, including the economic and administrative burdens associated with increased or substitute procedural requirements. There are two important interests of the government that we must consider in this case. First, the petitioner has an interest in lessening the costs of a termination trial. Beginning the trial anew would substantially increase the cost to the petitioner and would have "resulted in the very economic and administrative burdens on resources considered by this prong." *In re Candids E.*, supra, 111 Conn. App. 218. Additionally, "as parens patriae, the state is . . . interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child. . . . As [this court has] correctly noted, because of the psychological effects of prolonged termination proceedings on young children, time is of the essence. Any significant delay would undermine the state's important interest in protecting the welfare of children. This cost, and the state's interest in avoiding it, would rise as the delay increased. Accordingly, we recognize that the state has a vital interest in expediting the termination proceedings . . . ." (Internal quotation marks omitted.) Id. Delaying this matter for a trial de novo would place an unnecessary burden on the petitioner's interest in furthering a permanency plan for Tremaine. Therefore, the third factor of the *Mathews* balancing test favors the petitioner. After carefully considering the three factors of the *Mathews* balancing test, we conclude that the court did not violate the respondent's due process rights by failing sua sponte to order a new hearing on the petition. The respondent had no due process right to a new trial under

these circumstances. Accordingly, the respondent has not shown that a constitutional violation clearly exists, and his claim fails under the third prong of *Golding*.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] The respondent also requests review under the plain error doctrine. Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . . The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

The plain error doctrine "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009). In light of our conclusion that the respondent's constitutional right to due process was protected adequately, we conclude that the court's failure sua sponte to order a new hearing did not result in manifest injustice.