IN RE DEVON W. ET AL.*
(AC 31695)
(AC 31701)

Beach, Bear and Borden, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

632

Argued September 7—officially released October 26, 2010

*Valeria Caldwell-Gaines,* for the appellant (respondent mother in AC 31701).

*Trudy Condio*, for the appellants (minor child Devon W. et al. in AC 31695).

*Michael Besso*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman* and *Cynthia Mahon*, assistant attorneys general, for the appellee (petitioner in both cases).

*Opinion*

BORDEN, J. The respondent mother and three of her minor children, Devon W., Alexander S. and Xavier L., appeal from the judgments of the trial court rendered in favor of the petitioner, the commissioner of children and families, terminating her parental rights.[1] The respondent claims that the court improperly (1) denied her motion to dismiss the petitioner's termination of parental rights petition; (2) found that the department of children and families (department) made reasonable efforts to reunify her with her children; (3) found that she had failed to achieve a sufficient degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the children, she could assume a responsible position in their lives; and (4) violated her constitutionally protected liberty interest by terminating her parental rights solely on the basis of her mental health. In addition, the children claim that the court improperly found that termination of the respondent's parental rights was in their best interests. We affirm the judgments of the trial court.

---

[1] In AC 31701, the respondent mother appeals from the court's judgment terminating her parental rights. The minor children appeal from the court's judgment in AC 31695. We note that the minor children have standing to appeal from the judgment terminating the respondent mother's parental rights. See *In re Melody L.*, 290 Conn. 131, 157, 962 A.2d 81 (2009). The court also terminated the parental rights of each child's father. Because the respondent fathers have not appealed, we refer in this opinion to the respondent mother as the respondent.

The record reveals the following facts and relevant procedural history. As noted by the court, life has dealt the respondent a difficult hand. At the age of twelve, after having been abandoned by her father, she was removed from her mother's care as a result of being sexually assaulted by her mother's partner. In January, 2000, at the age of fifteen, the respondent was hospitalized after experiencing a psychotic episode characterized by voices commanding her to kill her grandmother, siblings and herself. She subsequently was diagnosed with "adolescent anti-social behavior and depressive disorder and suggested mild mental retardation . . . ."

In January, 2002, at the age of seventeen, the respondent gave birth to her first son, Devon. She gave birth to her second son, Alexander, in March, 2005. On March 9, 2005, the department became involved with the respondent after receiving a report that she had appeared at a prenatal appointment with two black eyes. The respondent reported to the department a history of domestic violence with the father of Alexander. As a result, the department opened the case for treatment services, and in July, 2005, the respondent participated in a psychological evaluation with Derek Franklin, a psychologist. Franklin confirmed that the respondent had a history of depression and psychosis, and reported that she had a full scale IQ of fifty-nine, which demonstrated cognitive impairment.

In August, 2005, Leshan B. Hanson, a social worker for the department, visited the respondent to conduct a comprehensive assessment of her condition. The respondent's mental health issues were the reason for the department's involvement in her case, coupled with concerns over possible parenting, housing and domestic violence problems. During this visit, Hanson confirmed the respondent's cognitive limitations, and she learned that the respondent was engaging in a transient lifestyle, living at various times with her mother, aunt

and a boyfriend. Additionally, the respondent informed Hanson that Devon had been living with his maternal grandmother since birth.

In September, 2005, the respondent and Alexander moved in with the maternal grandmother and Devon. Shortly thereafter, Hanson learned that the respondent had moved out of that home and had left her children in the maternal grandmother's care. The department later determined that the respondent had resumed her transient lifestyle and was unable to maintain a stable residence.

On April 18, 2006, the petitioner filed neglect petitions on behalf of Devon and Alexander, alleging that the two children had been neglected by being denied proper care and attention and by being permitted to live under conditions, circumstances or associations injurious to their well-being. The petitioner subsequently filed for and was granted an order of temporary custody of Devon and Alexander and, on October 19, 2006, both boys were adjudicated neglected and committed to the care of the petitioner. Following the removal of Devon and Alexander, the petitioner referred the respondent to Community Health Services (Community Health) and the Chrysalis Center, Inc. (Chrysalis Center),[2] for mental health treatment and parenting skills assistance. The respondent began attending services with Community Health but did not actively participate with the Chrysalis Center.

On November 22, 2006, the respondent gave birth to her third child, Xavier. The petitioner filed for and was granted an order of temporary custody of Xavier a few

[2] The Chrysalis Center is a nonprofit health care agency that provides support to individuals and families struggling with mental illness. See http://www.chrysaliscenterct.org/ (last visited September 23, 2010). The additional mental health services offered by the Chrysalis Center were recommended by the department so that the respondent could establish a relationship with an individual case manager.

days after his birth, and, on April 5, 2007, he was adjudicated neglected and committed to the care of the petitioner.

Following these events, the respondent obtained a stable residence and began working seriously toward reunification with her children. From June through October, 2007, she met regularly with Amy Taylor, a psychiatrist with Community Health. Taylor testified that during this time, the respondent was compliant with her mental health treatment and "very much [wanted] her children back and was willing to do whatever [the department] said to get them back." In August, 2007, as a result of her progress, the department initiated an intensive family reunification services program in order to assist in the reunification of the respondent and her children.

On October 8, 2007, the respondent gave birth to her fourth child, Aziah. Although the department continued to work toward reunifying the respondent with her other three children, following Aziah's birth, the respondent's compliance with her treatment began to deteriorate. Taylor testified that after Aziah was born, the respondent essentially "dropped out of treatment" for several months until reappearing at Community Health on January 22, 2008, without an appointment. According to Taylor, when the two met on this date, the respondent appeared psychotic, as she discussed the existence of an imaginary friend who would say things to her such as, "don't you know they're trying to screw you." The respondent therefore was prescribed antipsychotic medication for her condition. Taylor opined that the cause of the respondent's psychotic behavior was her lack of medication coupled with extreme stress that stemmed from her trying to take care of young children in her home.

On February 1, 2008, the petitioner filed for and was granted an order of temporary custody of Aziah. The

petitioner cited the respondent's continuing mental health issues and noncompliance with mental health treatment as the basis for removal. Aziah was adjudicated neglected and committed to the care of the petitioner on April 10, 2008.

Following her meeting with Taylor in January, 2008, the respondent's compliance with her mental health treatment at Community Health did not improve. She missed several appointments with her individual therapist, Suzanne Roberts, and Roberts reported to Taylor that the respondent was not taking her medication properly. As a result, in March, 2008, Taylor ordered Gentiva Health Services, Inc. (Gentiva), to visit the respondent daily in order to assist in the administration of her medication. In mid-April, however, Gentiva reported to Taylor that the respondent had missed numerous medication administration appointments and, as a result, it would cease to provide services to her.

Taylor last met with the respondent in May, 2008. Taylor testified that, although the respondent did not demonstrate signs of psychosis at that time, she was at risk for developing psychosis in the future if she did not take her medication properly or she was under extreme stress. The respondent then failed to attend follow-up appointments in June and July, 2008, and Community Health informed her that she would be discharged from its services. The respondent later called Taylor and indicated that she was going to transfer her treatment to Hartford Behavioral Health (Hartford Behavioral).

At Hartford Behavioral, the respondent met with Garry Milsop, a psychologist and senior clinician at the facility. Upon intake, Milsop diagnosed the respondent with major depression, severe without psychosis, and she was prescribed with an antidepressant. Milsop described the respondent's compliance with her mental

health treatment at Hartford Behavioral as "consistent and committed," and indicated that her attendance over the course of the treatment was normal. Although the two discussed her past psychotic episodes, the respondent failed to mention the episode she had in January, 2008, following the birth of Aziah. Milsop testified that this information would have been helpful in formulating his assessment of the respondent.

On August 6, 2008, the petitioner filed these petitions pursuant to General Statutes § 17a-112 to terminate the respondent's parental rights with respect to all four of her children. The petitioner alleged that each child had been adjudicated neglected and that the respondent had failed to achieve a sufficient degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in her children's lives. See General Statutes § 17a-112 (j) (3) (B).[3] Trial commenced, and at the close of the petitioner's case-in-chief, the respondent moved for a dismissal of the petitions, claiming that the petitioner had failed to make out a prima facie case. See Practice Book § 15-8.[4] The court denied that motion, concluding that the petitioner had "made a prima facie showing that

---

[3] General Statutes § 17a-112 (j) (3) (B) provides for the termination of parental rights when the child "(i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[4] Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil matter tried to the court, the [petitioner] has produced evidence and rested, a [respondent] may move for judgment of dismissal, and the judicial authority may grant such motion if the [petitioner] has failed to make out a prima facie case. . . ."

[the respondent's] mental health history and continuing condition [raise] significant doubt that she would be able to properly care for her four young children as they grow older . . . ."

Thereafter, the court issued its memorandum of decision granting the petitions for termination as to Devon, Alexander and Xavier, and denying the petition as to Aziah. The court reasoned that, although the respondent's "commitment to all of her children is unquestionable . . . for the three older boys, while still bonded to [her], too much time in the care of and bonded to others has passed for reunification to be in their best interest." The court also found, pursuant to § 17a-112 (k), that termination of parental rights was in the best interests of Devon, Alexander and Xavier. These appeals followed. Additional facts will be set forth as necessary.

I

RESPONDENT'S APPEAL

A

The respondent first claims that the court improperly denied her motion to dismiss the petitions for termination of her parental rights on the ground that the petitioner failed to produce sufficient evidence to establish a prima facie case. We disagree.

We begin our analysis by setting forth the applicable standard of review. "The standard for determining whether the [petitioner] has made out a prima facie case, under Practice Book § 15-8, is whether the [petitioner] put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the [petitioner] has failed to make out a prima facie case. In

testing the sufficiency of the evidence, the court compares the evidence with the allegations of the [petition]. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove." (Emphasis in original; internal quotation marks omitted.) *In re Nasia B.*, 98 Conn. App. 319, 325–26, 908 A.2d 1090 (2006). "[W]hether the [petitioner] has established a prima facie case is a question of law, over which our review is plenary." (Internal quotation marks omitted.) Id., 325.

The respondent contends that the court improperly denied her motion to dismiss because the court erroneously drew inferences in favor of the petitioner and improperly concluded that there was sufficient evidence to support the allegation that the respondent failed to rehabilitate herself. We begin by noting that any reasonable inferences that may have been drawn by the court in the petitioner's favor were permissible. When presented with a motion to dismiss filed pursuant to Practice Book § 15-8, "[t]he evidence offered by the [petitioner] is to be taken as true and interpreted in the light most favorable to [the petitioner] and every reasonable inference is to be drawn in [the petitioner's] favor." (Internal quotation marks omitted.) Id., 326; see also *Thomas* v. *West Haven*, 249 Conn. 385, 399, 734 A.2d 535 (1999) (in ruling on Practice Book § 15-8 motion, court determines "whether the plaintiff's evidence . . . *if given the benefit of all favorable inferences*, makes out a prima facie case" [emphasis in original]), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000).

We turn our attention to the respondent's claim that the petitioner failed to proffer sufficient evidence to establish a prima facie case. Specifically, she claims that the petitioner did not produce adequate evidence to demonstrate that the respondent failed to rehabilitate

herself as required by § 17a-112 (j) (3) (B). Our review of the record, however, reveals that the petitioner submitted an abundance of evidence that, when taken as true and interpreted in the light most favorable to the petitioner, demonstrated that the respondent's mental health history raised significant doubts as to whether she could rehabilitate to a level that would allow her to provide appropriate care for her children within a reasonable time.

As set forth previously, the petitioner's evidence at trial demonstrated that the respondent was hospitalized in January, 2000, as a result of a psychotic episode, and, at that time, she was diagnosed with a behavioral and depressive disorder coupled with mild retardation. This diagnosis was confirmed five years later by psychologist Franklin, who opined that the respondent had a full scale IQ of fifty-nine. Although the record reflects that the respondent was compliant with her mental health treatment for several months in 2007 while participating in services with Community Health, psychiatrist Taylor testified that the respondent essentially "dropped out of treatment" after the birth of Aziah, her fourth child. More important, Taylor testified as to the recurrence of a psychotic episode in January, 2008, and to the respondent's poor compliance with treatment from January through May, 2008, including her noncompliance with medication orders. In sum, there was ample evidence to establish a pattern of the respondent's mental instability and her failure to benefit from mental health treatment so as to raise legitimate concerns over her ability to rehabilitate herself sufficiently. Accordingly, we conclude that the court properly denied the respondent's motion to dismiss.

B

The respondent next claims that the court improperly found that the department had made reasonable efforts to reunify her with her children. We disagree.

We first turn to the standard of review that governs the respondent's claim. "In order to terminate parental rights under § 17a-112 (j), the department is required to prove, by clear and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification . . . . [Section 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous." (Internal quotation marks omitted.) *In re G.S.*, 117 Conn. App. 710, 716, 980 A.2d 935, cert. denied, 294 Conn. 919, 984 A.2d 67 (2009). "A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 145, 962 A.2d 81 (2009).

Our careful review of the record reveals that there was adequate evidence supporting the court's finding that the department had made reasonable efforts to reunify the respondent with her children. While the department was involved in the respondent's case, she was offered a multitude of services to support her mental health and parental skills, and to address her history of being a victim of domestic violence. Upon learning

that the respondent was engaged in a transient lifestyle and living apart from Devon and Alexander, the department refrained from immediate commitment of the children and allowed the respondent to mature to a stage where she might be in a position better to care for them. Additionally, when the respondent's compliance with her mental health treatment improved, the department recognized her efforts and offered additional services that were meant to assist in reunifying the family. Although the respondent criticizes the department for a temporary lapse in one of the many services offered to her, a brief lapse in a single service does not render the department's services unreasonable. See *In re Alexander T.*, 81 Conn. App. 668, 673, 841 A.2d 274 (single lapse in referral services "does not make the overall efforts of the department fall below the level of what is reasonable"), cert. denied, 268 Conn. 924, 848 A.2d 472 (2004). We conclude, therefore, that the court's finding that the department had made reasonable efforts at reunification was not clearly erroneous.

C

The respondent also claims that there was insufficient evidence to support the court's finding that she had failed to achieve adequate personal rehabilitation pursuant to § 17a-112 (j) (3) (B). We disagree.

The applicable standard of review for the respondent's claim is well settled. "A trial court's finding that a parent has failed to achieve sufficient rehabilitation will not be overturned unless it is clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . .

"On appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat

weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Melody L.*, supra, 290 Conn. 148.

"We have stated that [p]ersonal rehabilitation as used in [§ 17a-112] refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . Rehabilitate means to restore [a . . . delinquent person] to a useful and constructive place in society through social rehabilitation. . . . The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Internal quotation marks omitted.) *In re Kaitlyn A.*, 118 Conn. App. 14, 26, 982 A.2d 253 (2009).

The respondent contends that the trial court erroneously found that she had failed to achieve sufficient personal rehabilitation because the evidence she presented at trial demonstrated her consistent progress with mental health treatment. Although there were facts in the record that demonstrated that the respondent's condition had improved over time, and that she was

continuing to receive treatment from Hartford Behavioral at the time of trial, "[s]uccessful completion of the petitioner's . . . expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the [children] at issue. . . . Thus, even if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her children." (Internal quotation marks omitted.) Id.

As we explained in part I A of this opinion, there was ample evidence in the record to support the court's finding that the respondent had failed to rehabilitate herself sufficiently. It is undisputed that the respondent had a history of mental illness, including periods of hospitalization and diagnoses of antisocial and depressive disorders. More important, her participation in treatment services for her mental health condition at times was poor and, for a period of time, nonexistent. Additionally, the record reflects that the respondent's condition worsened when she was under the stress of taking care of Aziah while increasing visitation with her other three children. The court's "significant concerns about the likely success of full reunification" are buttressed by the fact that the respondent has never demonstrated an ability to care for all of her children at the same time. We therefore conclude that there was sufficient evidence in the record supporting the court's finding that the respondent failed to achieve a sufficient degree of personal rehabilitation as would encourage

the belief that she could assume a responsible position in each child's life within the foreseeable future.

## D

We turn next to the respondent's claim that the court violated her constitutionally protected liberty interest by terminating her parental rights solely on the basis of concerns about her mental health. The respondent concedes that her claim was not raised at trial and now seeks to prevail on appeal on the basis of her unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[5] and the plain error doctrine.[6]

We conclude that the respondent has failed to demonstrate that her claim is one of constitutional magnitude, and, therefore, it is not reviewable under *Golding*. The respondent maintains that her claim is of constitutional dimension because it implicates her fundamental right to raise her children. Although we recognize that "[t]he right of a parent to raise his or her children has been recognized as a basic constitutional right"; (internal quotation marks omitted) *In re Tremaine C.*, 117 Conn. App. 521, 529, 980 A.2d 317, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009); our review of the constitutional violations the respondent alleges reveals that she is

---

[5] Under *Golding*, a party "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [respondent's] claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[6] The plain error doctrine has been codified in Practice Book § 60-5, which provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines . . . that the decision is . . . erroneous in law. . . ."

essentially contending that the court's findings were not supported by clear and convincing evidence. The respondent's claim consists of allegations that the court failed properly to weigh facts in her favor, improperly found that the petitioner produced sufficient evidence of her cognitive limitations and difficulty managing her daily life, and failed to explain the clear and convincing evidence it relied on in making its findings related to the department's reasonable efforts at reunification and the best interests of the children. "Putting a constitutional tag on a nonconstitutional claim will [not] change its essential nature . . . ." (Internal quotation marks omitted.) *State* v. *Altajir*, 123 Conn. App. 674, 687–88, 2 A.3d 1024 (2010). Because the respondent has failed to allege a claim of constitutional magnitude, she cannot prevail under *Golding*.

The respondent also seeks to prevail under the plain error doctrine. "The plain error doctrine is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Internal quotation marks omitted.) *In re Tremaine C.*, supra, 117 Conn. App. 535 n.13. The record does not support the respondent's claim under the plain error doctrine.

## II

## MINOR CHILDREN'S APPEAL

Finally, we address the claim brought by Devon, Alexander and Xavier that during the dispositional phase of

the trial, the court erroneously found that termination of the respondent's parental rights was in their best interests.[7] We disagree.

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child." (Internal quotation marks omitted.) *In re Janazia S.*, 112 Conn. App. 69, 97, 961 A.2d 1036 (2009). "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment. . . . In the dispositional phase . . . the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]."[8] (Internal quotation marks omitted.) *In re Joseph L.*, 105 Conn. App. 515, 529, 939 A.2d

---

[7] The children also repeat the claim asserted by the respondent that the court erroneously found that she failed to rehabilitate as required by § 17a-112 (j) (3) (B). We addressed and rejected that claim in part I C of this opinion.

[8] General Statutes § 17a-112 (k) provides in relevant part: "[I]n determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered . . . (2) whether the [d]epartment . . . has made reasonable efforts to reunite the family . . . (3) the terms of any applicable court order entered into . . . and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents . . . and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child . . . or by the economic circumstances of the parent."

16, cert. denied, 287 Conn. 902, 947 A.2d 341, 342 (2008). "It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the children only if the court's findings are clearly erroneous." *In re Rachel J.*, 97 Conn. App. 748, 761, 905 A.2d 1271, cert. denied, 280 Conn. 941, 912 A.2d 476 (2006).

Our careful review of the record reveals that the court, in granting the petitions to terminate the respondent's parental rights, properly considered the statutory factors set forth in § 17a-112 (k) and issued findings that are neither clearly erroneous nor contrary to the law. Although the respondent claims that the evidence adduced at trial revealed that she and the children have a strong bond, "[o]ur courts consistently have held that even when there is a finding of a bond between parent and a child, it still may be in the child's best interest to terminate parental rights." (Internal quotation marks omitted.) *In re Joseph L.*, supra, 105 Conn. App. 531. More important, the court's analysis properly addressed the respondent's inability to provide a stable home and permanent care for all of her children at the same time, as reflected by the fact that each child has spent a considerable portion of his life in the custody of the petitioner. See *In re Victoria B.*, 79 Conn. App. 245, 263, 829 A.2d 855 (2003) (trial court's best interest findings not clearly erroneous when much of child's life had been spent in custody of petitioner and child needed stability and permanency). Accordingly, we conclude that there existed clear and convincing evidence for the court to have found that it was in the best interests of the children to terminate the parental rights of the respondent.

The judgments are affirmed.

In this opinion the other judges concurred.