IN RE LUKAS K.*
(AC 30671)

Bishop, DiPentima and Hennessy, Js.* *

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

* * The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 10, 2009—officially released April 20, 2010

*Mildred Doody,* for the appellant (respondent).

*Frank A. Manfredi,* for the appellee (petitioner).

*Denise Ansell,* for the minor child.

*Opinion*

HENNESSY, J. The respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his minor son, Lukas K., rendered after a petition was brought by the petitioner mother pursuant to General Statutes § 45a-717 (g) (2) (A) and (C). The respondent claims that the court improperly (1) denied his motion for a continuance and a transcript, (2) denied him an opportunity to participate in the trial through videoconferencing, (3) denied his motion in limine, (4) terminated his parental rights on the basis of no ongoing parent-child relationship where this ground was not proven by clear and convincing evidence, and (5) terminated his parental rights on the basis of abandonment where this ground was not proven by clear and convincing evidence. We affirm the judgment of the trial court.

The following facts and procedural history, as found by the trial court, are relevant to our review. The petitioner and the respondent met approximately ten years prior to trial when he was incarcerated in Tennessee. During his incarceration, the petitioner and the respondent communicated by letters and by telephone. In March, 2004, the respondent was released from prison, traveled to New Hampshire, where the petitioner and her relatives were residing, and developed a relationship with the petitioner that lasted through October, 2004.

In November, 2004, the respondent was arrested for burglary occurring on June 13, 2004, tampering with witnesses or informants occurring on November 5, 2004, theft by unauthorized taking occurring on November 5, 2004, theft by unauthorized taking occurring on November 12, 2004, and escape occurring on November 29, 2004. On May 17, 2005, the respondent entered state prison in New Hampshire.

Approximately one month later, in June, 2005, Lukas was born. Since his birth, Lukas has resided with the petitioner and his two older half sisters born to the petitioner from an earlier relationship. In October, 2005, the petitioner met her current husband. They moved in together in April, 2006, and were married one month later in May, 2006. The petitioner's husband, Lukas' stepfather, is the only father that Lukas has known, and Lukas relates to him as his father. His stepfather provides for and meets the needs of Lukas. As such, the petitioner, the stepfather, the two half sisters, Lukas and a child of the petitioner and the stepfather, born subsequent to their marriage, live as an integrated functioning family.

The respondent admits that he has never seen or had contact with Lukas. Furthermore, the respondent admits that at this time, due to Lukas' young age, Lukas

has no knowledge that the respondent is his biological father. The respondent has never paid child support.

On April 16, 2007, the petitioner filed a petition to terminate the parental rights of the respondent in Probate Court, alleging that the respondent had abandoned Lukas. Subsequently, the Probate Court granted the respondent's motion to transfer the case to the Superior Court for juvenile matters. On April 17, 2008, the Superior Court granted the petitioner's motion to amend her petition to add the second ground that no ongoing parent-child relationship exists between the respondent and Lukas. Due to negotiations over a potential consent agreement between the parties, the court granted a continuance on June 18, 2008. The court noted that if an agreement was not reached, the case would proceed to trial at the earliest available date. Because a consent agreement was not reached, the case proceeded to trial.

At trial on December 10, 2008, the petitioner, her attorney, the attorney for Lukas and the attorney for the respondent appeared before the court. The respondent was incarcerated in New Hampshire at the time of trial and only available to participate by telephone for approximately thirty minutes. The issues before the court were whether the respondent's parental rights should be terminated on the basis of one or both of the alleged grounds and whether termination of the respondent's parental rights was in the best interest of Lukas. Additionally, after the petitioner rested her case, the respondent's counsel moved for a continuance and requested a transcript of the day's proceedings so that he could advise his client adequately on whether he should testify. The court denied those requests. In a memorandum of decision filed December 15, 2008, the court found by clear and convincing evidence that Lukas had been abandoned by the respondent, that there was no ongoing parent-child relationship between the respondent and Lukas and that it was in the best

interest of Lukas to terminate the parental rights of the respondent.

Pursuant to § 45a-717 (e), a department of children and families (department) social worker prepared a social study. The respondent admitted to the department's social worker that he was incarcerated in New Hampshire as a result of a burglary and a dispute with a neighbor and that he had been sentenced to four to nine years. Additionally, the respondent admitted that "he has been arrested many times in the past both for federal offenses and crimes committed in . . . Tennessee. He said that he was incarcerated 'in the [S]outh for strong arm robbery, conspiracy to possess stolen firearms and eighteen or nineteen violations of probation in Tennessee.' " The respondent claimed that he had not been convicted of any crimes against women and children but that "he had a bad temper when it comes to men . . . ."

The court found that during the respondent's 2004 relationship with the petitioner, he abused, threatened and committed domestic violence against the petitioner both before and after she became pregnant with Lukas. The respondent's abuse, however, was not targeted only at the petitioner. The respondent also twice struck one of Lukas' half sisters. As a result, both of Lukas' half sisters are afraid of the respondent. Furthermore, the respondent has also threatened to kill the petitioner. The petitioner's mother overheard such threats two or three times. Although the petitioner ended her relationship with the respondent in October, 2004, the respondent has threatened from prison to send his family after the petitioner. Additional facts will be set forth as necessary.

I

The respondent first claims that the court violated his rights to procedural due process when it denied

his motion for a continuance and a transcript. We do not agree.

On appeal, the respondent framed the court's denial of his motion for a continuance and a transcript as a due process violation—a constitutional claim that the respondent alleges he raised at trial. Although the record reveals that the respondent's counsel made an oral motion for a continuance and a transcript request, counsel did not expressly state the existence of a due process claim, and it does not appear that the court treated it as such.[1] In these circumstances, it is evident that the respondent's constitutional claim does not fit within the parameters of this court's holding that it will hear a claim only if "it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *In re Candids E.*, 111 Conn. App. 210, 215 n.7, 958 A.2d 229 (2008).

In the alternative, however, the respondent seeks review of this claim pursuant to *State* v. *Golding*, 213

---

[1] Specifically, the respondent's counsel at trial made an oral motion for a transcript of the proceedings that day so that counsel "could at least have some written record [that he] could send to [the respondent] for his review and [so that counsel] could engage in extensive telephone conferences with him for preparation of his testimony. And [although counsel is aware that it is] an encumbrance on the court in terms of further delay in these proceedings, but [nonetheless counsel thinks that his client] has the right to testify or decide or elect not to testify, at least, based upon the review from the presentment of evidence against him."

Furthermore, the respondent's counsel argued that his client would suffer detriment if the court decided to push the case along without a continuance and the production of a transcript and, last, that it was a question of fundamental fairness to provide a transcript so that he could properly advise his client. The court, in turn, summarily denied the respondent's motion. Given these facts, we conclude that simply stating that a motion for a transcript implicates fundamental fairness is not enough to preserve a constitutional claim, especially when it is not clear that the court treated it as such. Cf. *In re Candids E.*, 111 Conn. App. 210, 214 n.7, 958 A.2d 229 (2008) (merits of respondent's due process claim clearly raised and addressed by court).

Conn. 233, 239–40, 567 A.2d 823 (1989).[2] Under *Golding,* a party "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [respondent's] claim will fail. The appellate tribunal is free, therefore, to respond to the [respondent's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id.

Although the record is adequate for review, in order to reach the merits of the respondent's claim on appeal, we first must determine whether, under the facts of this case, he has met his burden of proving that the denial of the requested continuance and a transcript is a claim of constitutional magnitude. "In general, a claim that a court improperly denied a motion for a continuance is not a constitutional claim, but rather one that rests in the discretion of the trial court. . . . If the denial of the continuance is directly linked, however, to a constitutional right, then due process rights are implicated, and the claim is of constitutional magnitude. . . .

"In *In re Shaquanna M.,* [61 Conn. App. 592, 605–608, 767 A.2d 155 (2001)], we held that due process rights were violated when the court denied the respondent a continuance to obtain new counsel for her children after the individual who had been serving as their attorney and guardian ad litem had died. *In re Shaquanna*

---

[2] *Golding* review applies in civil as well as criminal cases. *Perricone* v. *Perricone,* 292 Conn. 187, 212 n.24, 972 A.2d 666 (2000).

*M.* involved a denial of a continuance in a proceeding to terminate parental rights. As the proceeding to terminate parental rights implicated the respondent's constitutional right to maintain a relationship with her children, we assessed the court's denial of the continuance pursuant to a procedural due process standard and not the general abuse of discretion standard." (Citations omitted.) *Foster* v. *Foster*, 84 Conn. App. 311, 317, 853 A.2d 588 (2004).

Similarly, the present case involves a petition to terminate the respondent's parental rights, and the respondent's motion for a continuance and a transcript is directly linked to a constitutional right. It is clear that "[t]he right of a parent to raise his or her children has been recognized as a basic constitutional right." (Internal quotation marks omitted.) *In re Tremaine C.*, 117 Conn. App. 521, 529, 980 A.2d 317, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009). Thus, the first two *Golding* conditions are met, and we next consider whether a constitutional violation clearly exists and whether the respondent was clearly deprived of his right to a fair trial.

The respondent's claim fails under the third *Golding* prong because the constitutional violation does not clearly exist, and the respondent was not clearly deprived of a fair trial. "The United States Supreme Court in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), established a three part test to determine whether the actions of the court violated a party's right to procedural due process. The three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural

requirements. . . . Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures."[3] (Internal quotation marks omitted.) *In re Tremaine C.*, supra, 117 Conn. App. 529–30. "The bottom-line question is whether the denial rendered the trial fundamentally unfair in view of the *Mathews* factors." *In re Shaquanna M.*, supra, 61 Conn. App. 606.

As stated previously, the respondent's interest in retaining his parental rights as to Lukas is constitutionally protected. A petition to terminate parental rights threatens the respondent's constitutionally protected interest. Accordingly, the first factor of the *Mathews* balancing test weighs in favor of the respondent. See *In re Candids E.*, supra, 111 Conn. App. 216–17.

We next turn to a consideration of "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards . . . ." *Mathews* v. *Eldridge*, supra, 424 U.S. 335. The respondent argues that the risk of erroneous deprivation is heightened because denying the incarcerated respondent's motion for a continuance also denied him an opportunity to be heard and to address the petitioner's claims against him. According to the respondent, his request for a continuance and a transcript would have afforded him a valuable, practicable procedural safeguard. By refusing these requests, the respondent alleges, the court denied him a meaningful opportunity

---

[3] Although the termination proceeding in this case was initiated by a private party as a prelude to an adoption petition by the stepfather, rather than by a state agency, the challenged state action remains essentially the same: the respondent resists the imposition of an official decree extinguishing, as no power other than the state can, his parent-child relationship with Lukas. See *M.L.B.* v. *S.L.J.*, 519 U.S. 102, 116 n.8, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996).

to be heard and, thus, deprived him of a fundamental requirement of due process.[4] We are not persuaded.

We begin by noting that the respondent was represented throughout the trial by counsel. This court has stated that "[i]t is in the interest of justice to ensure that any parent caught in the throes of a termination proceeding be present, *or at least represented by counsel*, from the beginning of the hearing. . . . There can be, however, circumstances in a termination hearing in which the mere presence, alone, of a respondent's counsel, is not sufficient for a court to proceed in the respondent's absence. . . . "[5] (Citation omitted; emphasis added; internal quotation marks omitted.) *In re Candids E.*, supra, 111 Conn. App. 217. This is not such a circumstance. See id.

Here, the court granted the respondent a continuance on June 18, 2008, so that the parties could pursue a consent agreement. In granting the continuance, the court stated: "[I]f there isn't . . . consent, I will proceed with the trial, regardless of what may, unfortunately, be impediments . . . ." When settlement efforts

[4] After making this argument, the respondent then proceeded to argue in his brief that because he was denied the opportunity to present evidence in his defense, the court made an adverse inference in concluding that it was his personal choices and circumstances that prevented him from developing a relationship with Lukas. Because the court did not warn the respondent that an adverse inference would be made on the basis of the respondent's failure to testify, the respondent argues that he could not make an informed choice regarding the presentation of his defense. This argument lacks merit. Such notice is required only if a court is inclined to draw an adverse inference. *In re Samantha C.*, 268 Conn. 614, 674, 847 A.2d 883 (2004). No evidence supports the respondent's assertion that the court made, or was inclined to make, an adverse inference on the basis of the respondent's failure to testify. Rather, the court relied on clear and convincing evidence in arriving at its determinations.

[5] Additionally, it also important to note that in proceeding with the trial on the merits, the court required the petitioner to prove by clear and convincing evidence not only the ground for termination, but that it was in Lukas' best interest for the respondent's parental rights to be terminated. See *In re Candids E.*, supra, 111 Conn. App. 217.

failed, the court specifically continued the case to a " 'firm and final trial date' " in December based on the respondent's representation that he would be able to attend a hearing in person if it were scheduled in or after November, 2008. This representation, however, proved false. On September 25, 2008, the respondent was denied parole because he tested positive for heroin metabolite and had "two majors" in 2008.[6] Consequently, both the respondent and his counsel were aware in September, given the respondent's continued incarceration in New Hampshire, that he would not physically be able to attend the trial. Regardless of this knowledge, the respondent and his counsel failed to notify the court, failed to request another continuance in advance of trial and failed to pursue any pretrial discovery options.

As a result, on the basis of matters solely within his control, the respondent was incarcerated at the time of trial and was only available to participate by telephone for approximately thirty minutes–the maximum time allowed by the out of state prison facility. Despite the respondent's failure to appear personally, the court, as well as the petitioner's counsel, offered the respondent the opportunity to testify telephonically out of order. The attorney for the respondent rejected this offer because he wanted the respondent to hear his arguments regarding three pretrial motions. The court denied all of these motions[7] and, subsequently, given what the court heard at trial and what the respondent would stipulate to, denied the motion for a transcript

---

[6] The "two majors" refer to major disciplinary reports filed against the respondent while he was in prison.

[7] Immediately after denying the respondent's motions, the court reiterated: "I just will say one more time, the reason that the trial was continued to today was [that] there was a representation by the [respondent] that the [respondent], if the trial were continued, would be able to be here physically today."

and any further delay caused by allowing the respondent to testify in the future.[8]

In reliance on *In re Jonathan P.*, 23 Conn. App. 207, 214, 579 A.2d 587 (1990), the respondent argues that the opportunity to provide spontaneous input into his counsel's cross-examination and recross-examination of the petitioner's witnesses is important enough to warrant due process protection. The respondent's reliance on *In re Jonathan P.*, however, is misplaced. "The respondent's due process rights were violated in that case because the respondent, who was incarcerated, was prevented from participating in the termination of parental rights trial on the basis of state sanctioned action. . . . In [*In re Jonathan P.*], the respondent had not been transported by the department of correction to court even though a habeas writ had been issued for him to be present that morning." (Citation omitted.) *In re Tremaine C.*, supra, 117 Conn. App. 532. In the present case, even though the respondent was incarcerated, the state did not prevent him from appearing in court. See id.

The present case is more analogous to *McDuffee* v. *McDuffee*, 39 Conn. App. 412, 664 A.2d 1164 (1995), in which the plaintiff challenged the court's denial of a continuance for a custody hearing because she was involved in a criminal matter in a different state. See *In re Tremaine C.*, supra, 117 Conn. App. 533. "In *McDuffee*, we stated: 'The plaintiff's claim that her due process rights were violated is without merit. She confuses her own inaction in failing to arrange to be present

---

[8] On March 6, 2009, the respondent sought an articulation of the court's denial of his oral motion for a transcript and for a continuance. The court denied the respondent's motion for articulation on April 1, 2009, because the court set forth the reasons for its denial in the court's December 15, 2008 memorandum of decision. The respondent did not seek review of the court's denial of his motion for articulation.

or to provide testimony at the hearing with an affirmative action by the trial court denying her the right to be present. This is a private custody dispute, and the court did nothing to prevent the plaintiff from appearing. The record is devoid of any indication that the plaintiff availed herself of any of the procedures that would have allowed her to provide evidence or to be present. We conclude, therefore, that the trial court did not violate the plaintiff's due process rights.' " Id.

Correspondingly, although the respondent in this case knew he could not physically attend the trial, he did not avail himself of any of the procedures that would have allowed him to provide evidence or to telephonically provide testimony at the start of the trial. Furthermore, the respondent waited until the day of trial to make his request for a continuance. There was simply no affirmative act by the court to deny the respondent the opportunity to be present at the termination proceedings. Conversely, the court specifically had continued the trial date based on the respondent's representation that he could attend in December. Under these facts, we conclude that the second factor of the *Mathews* balancing test weighs in favor of the petitioner.

Our consideration of the third factor under the *Mathews* balancing test, the function involved and the fiscal and administrative burdens placed on the court in granting a continuance and a request for a transcript, is complicated by the lack of a record before us. Specifically, the record is devoid of information concerning the length of time it would have taken to prepare a transcript of the December 10, 2008 proceedings and, additionally, how long it would have taken to send a copy to the respondent in New Hampshire for his review. It is the respondent's burden to provide an adequate record for review. See *Eremita* v. *Morello*, 111 Conn. App. 103, 107, 958 A.2d 779 (2008). It is not the

court's duty to inquire about transcript preparation time. On the other hand, the court does have an interest in managing its docket as well as protecting the rights of all the parties—particularly when the court already had granted a continuance in the past and valuable resources had been allocated throughout the proceedings.

As applied to the specific facts of this case, the *Mathews* balancing test does not support the respondent's due process claim. Accordingly, because we cannot conclude that the court's denial of the respondent's request for a continuance and a transcript rendered the trial fundamentally unfair, the respondent has not shown that a constitutional violation clearly exists. Thus, his claim fails under the third prong of *Golding*.

## II

The respondent next claims that the court violated his procedural due process rights when it denied him the opportunity to participate at trial using videoconference technology. We disagree.

The following additional facts are necessary for our resolution of the respondent's claim. On March 28, 2008, the respondent's counsel filed a motion for order to allow the respondent to participate at trial by videoconference. The respondent's counsel argued in the motion, as well as before the court on April 17, 2008, that the court's failure to provide the respondent with access to videoconference technology at trial would violate his procedural due process rights as mandated by the fourteenth amendment to the federal constitution and the constitution of Connecticut. After hearing the respondent's arguments, the court allowed the parties to file supplemental briefs to further explore the alleged due process implications of videoconference access.

On December 1, 2008, the respondent filed a motion for a pretrial hearing to consider, inter alia, the motion

for order filed on March 28, 2008. In addition, because the December trial was to take place at the Middletown courthouse where videoconference access was not available, the respondent also filed a motion for a change of venue to avail the respondent of his alleged right to participate by videoconference at a different courthouse in Connecticut that had access to the requisite technology.

At trial on December 10, 2008, the respondent's counsel presented a letter from the warden of the New Hampshire prison where the respondent was incarcerated. The court allowed the letter to be admitted as an exhibit. The warden's letter states that there are hearing rooms available for videoconferencing but that those rooms are used primarily within the facility for parole board and sentence review hearings. The letter goes on to state: "However, if you are successful in your argument to use video-conferencing, you may contact my office, prior to the [c]ourt scheduling a date, and request if there is a Monday or a Wednesday that is available for the hearing. The room is frequently booked, and therefore unavailable to schedule for longer trials."

After admitting the warden's letter and listening to additional pretrial motions, the court denied all of the respondent's motions. With regard to the videoconference argument in particular, the court stated that there is no case in Connecticut that holds that failure to provide videoconferencing is a denial of due process. Additionally, the court stated that "there is no Practice Book authority allowing videoconferencing in juvenile or child protection cases, and, therefore, the position of the judicial branch is that the court is without authority on its own to conduct or hold such videoconferencing."

To begin our analysis, it is clear that the respondent adequately preserved this constitutional claim. Because

the respondent is raising an alleged procedural due process violation directly linked with a petition to terminate his parental rights, its resolution is a question of law for which our review is plenary. See *In re Shaquanna M.*, supra, 61 Conn. App. 600.

The proper legal framework from which to analyze a procedural due process claim is to consider the factors in *Mathews* v. *Eldridge*, supra, 424 U.S. 319. See part I of this opinion. The respondent's interest in retaining his parental rights as to Lukas is constitutionally protected. The risk of an erroneous deprivation of such interest, however, given the existing procedures, does not weigh in favor of the respondent. Despite representations that he could attend a trial in December—thus, negating the need for videoconferencing altogether— the respondent's parole was denied on the basis of his own actions. At trial, not only could the respondent have testified telephonically, but his attorney was present throughout the hearing. Furthermore, in proceeding with the trial on the merits, the court required the petitioner to prove by clear and convincing evidence the ground for termination, as well as that it was in Lukas' best interest for the respondent's parental rights to be terminated. See *In re Candids E.*, supra, 111 Conn. App. 217.

Additionally, even if the court had granted the respondent's motion to order videoconferencing, there is simply no evidence in the record to conclude that the respondent would unquestionably have had access to the prison's videoconferencing equipment or, alternatively, that the trial would not have been delayed indefinitely[9] due to scheduling problems at the prison. Consequently, applying all the *Mathews* factors, we conclude that the respondent's due process rights were not

[9] The respondent potentially could be incarcerated in New Hampshire until 2013.

violated by the court's refusal to grant his motion to order that he have videoconferencing access at trial.

### III

The respondent next claims that the court abused its discretion in denying his motion in limine. We disagree.

The respondent's motion in limine, filed on March 28, 2008, sought to exclude evidence of the respondent's criminal history prior to the start of the relationship between the petitioner and the respondent because it was not relevant to the present proceedings. Furthermore, the respondent argued that the prejudicial effect of such evidence far outweighed any probative value.

At trial, the respondent renewed his motion by specifically trying to exclude from evidence the petitioner's certified copies of the respondent's past criminal history that he believed dated back to 1995. The court subsequently denied the motion, and the case proceeded to trial. In its memorandum of decision, the court found the respondent's criminal history to be both relevant and probative information.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *In re Angellica W.*, 49 Conn. App. 541, 549, 714 A.2d 1265 (1998); see also Conn. Code Evid. § 4-1. Furthermore, "[o]ur standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing . . . of substantial prejudice or injustice. . . . Additionally, it is well settled that even if the evidence was improperly admitted, the [party challenging the ruling] must also establish that the ruling was harm-

ful and likely to affect the result of the trial." (Internal quotation marks omitted.) *In re Anna Lee M.*, 104 Conn. App. 121, 126, 931 A.2d 949, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007).

We conclude that the court did not abuse its discretion in determining that the evidence was relevant and that the probative value of the respondent's criminal history outweighed any prejudicial effect. Evidence of a continuing course of conduct that clearly showed that the respondent was not able to support an ongoing parent-child relationship as required by § 45a-717 (g) (2) (C) is certainly relevant in a termination of parental rights proceeding. Furthermore, it is also clear that the respondent was not substantially prejudiced by these exhibits, nor has he adequately shown that the court's ruling was likely to affect the result of the trial. Accordingly, this claim fails.

IV

Finally, the respondent claims that the court improperly terminated his parental rights on the basis of a finding of abandonment pursuant to § 45a-717 (g) (2) (A) and on a finding of no ongoing parent-child relationship pursuant to § 45a-717 (g) (2) (C).[10] The legal framework for deciding termination petitions is well

---

[10] We note that the commissioner of children and families may also bring a petition to terminate parental rights, when the child is in the custody of the department, based on a finding of abandonment pursuant to General Statutes § 17a-112 (j) (3) (A) or the absence of an ongoing parent-child relationship pursuant to § 17a-112 (j) (3) (D). Other than the addition of the word "continuing" in § 45a-717 (g) (2) (C), the language of § 17a-112 (j) (3) (A) and (D) is nearly identical to the language in § 45a-717 (g) (2) (A) and (C).

Accordingly, we have applied the same analytical framework and meaning of abandonment and no ongoing parent-child relationship for petitions to terminate parental rights pursuant to either § 17a-112 (j) (3) (A) and (D) or § 45a-717 (g) (2) (A) and (C). Compare *In re Ashley E.*, 62 Conn. App. 307, 314, 771 A.2d 160 (applying abandonment under § 45a-717 [f] [1], currently § 45a-717 [g] [2] [A]), cert. denied, 256 Conn. 910, 772 A.2d 601 (2001) and *In re Valerie D.*, 223 Conn. 492, 531, 613 A.2d 748 (1992) (applying no ongoing parent-child relationship under § 45a-717 [f] [3], currently § 45a-717 [g] [2] [C]) with *In re S.D.*, 115 Conn. App. 111, 122, 972 A.2d 258 (2009)

established. "[A] hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in [§ 45a-717 (g) (2)] exists by clear and convincing evidence. . . . If the trial court determines that a statutory ground for termination exists,[11] then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child."[12] (Citation omitted; internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 487, 940 A.2d 733 (2008). We conclude that the court's decision to terminate the respondent's parental rights was proper.

Before analyzing the respondent's specific claims, we note our standard of review. "It is axiomatic that a trial court's factual findings are accorded great deference. Accordingly, an appellate tribunal will not disturb a trial court's finding [regarding the] termination of parental rights . . . unless that finding is clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing

(applying abandonment under § 17a-112 [j] [3] [A]) and *In re Christian P.*, 98 Conn. App. 264, 269–70, 907 A.2d 1261 (2006) (applying no ongoing parent-child relationship under § 17a-112 [j] [3] [D]).

[11] In the present case, for the respondent to prevail, he "must successfully challenge both of the bases of the judgment terminating [his] parental rights. *In re Kezia M.*, 33 Conn. App. 12, 17, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993). If either of the grounds on which the trial court relied are upheld on appeal, the termination of parental rights must stand." *In re Angellica W.*, supra, 49 Conn. App. 550.

[12] Additionally, as part of the dispositional phase, the court must consider and make written findings concerning the six factors set out in § 45a-717 (h). The court's memorandum of decision articulates the requisite findings as to each applicable statutory factor, and the respondent does not take issue with the court's dispositional phase determination by challenging those findings. Rather, it appears that the respondent is challenging only the court's adjudicatory phase determinations.

court is left with the definite and firm conviction that a mistake has been made. . . .

"On appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) Id., 488.

A

The respondent first claims that the court improperly terminated his parental rights on the basis of no ongoing parent-child relationship because this ground was not proven by clear and convincing evidence. We disagree.

Pursuant to § 45a-717 (g) (2) (C), the court may approve a petition terminating the parental rights if it finds, on clear and convincing evidence, that the termination is in the best interest of the child and that "there is no ongoing parent-child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and [that] to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child . . . ."

We have determined that under this part of the statute the court undertakes a two-pronged analysis. "First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental

to the child's best interest to allow time for such a relationship to develop. . . . In *In re Jessica M.*, 217 Conn. 459, 586 A.2d 597 (1991), our Supreme Court defined an ongoing parent-child relationship as it applies to noncustodial parents. The court stated that termination of a noncustodial parent's rights requires a finding that the child has no present memories or feelings for the natural parent." (Citation omitted; internal quotation marks omitted.) *In re Christian P.*, 98 Conn. App. 264, 269, 907 A.2d 1261 (2006).

In its memorandum of decision, the court found that the respondent had admitted that no parent-child relationship exists. Additionally, the court found that Lukas "has no emotional bond with [the respondent], whom he has never seen and about whom, because he is three years old, he is not aware." In addressing the second required step of the analysis, the court recognized that it "must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. Since the [respondent] may be incarcerated through November, 2013, although he could be paroled earlier than such date [and because] Lukas believes that the stepfather is his 'real father', and he is not aware of the [respondent]; and since Lukas perceives his mother, his stepfather, his older half sisters and his new half sister as his family, it would be detrimental to his best interests to allow time for such [a] new relationship to develop."

Consequently, the court found, by clear and convincing evidence, that there is no ongoing parent-child relationship between the respondent and Lukas. In light of the facts found by the court, it is also evident that to allow further time for the establishment of a parent-child relationship would be detrimental to the best interest of Lukas. The findings of fact amply support the court's conclusion on this issue.

## B

The respondent next claims that the court improperly terminated his parental rights on the basis of abandonment because this ground was also not proven by clear and convincing evidence. We do not agree.

Pursuant to § 45a-717 (g) (2) (A), the court may grant a petition terminating the parental rights if it finds, on clear and convincing evidence, that the termination is in the best interest of the child and that "the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ." We have stated that "[a]bandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." (Internal quotation marks omitted.) *In re Angellica W.*, supra, 49 Conn. App. 551. "While [a] respondent's imprisonment alone does not constitute abandonment, it does not excuse his failure to attempt either to contact or to visit with his children." (Internal quotation marks omitted.) *In re Ashley E.*, 62 Conn. App. 307, 315, 771 A.2d 160, cert. denied, 256 Conn. 910, 772 A.2d 601 (2001).

"Moreover, we have identified the minimal parental obligations for determination of whether abandonment has occurred. 'The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general

well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Internal quotation marks omitted.) *In re Angellica W.*, supra, 49 Conn. App. 551. In its memorandum of decision, the court not only recognized the previously mentioned parental obligations, but went on to state that "[a] parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern. . . . [Additionally] [t]he [respondent's] self-created fact of incarceration for a child's entire life to date is not a valid excuse for failing to perform the foregoing parental responsibilities and duties . . . ." (Citations omitted.)

After considering the evidence, the court found that "Lukas was born in June, 2005. He is three and one-half years old. Regardless of the [respondent's] natural feelings for [Lukas], he is not now and in the past has not been a part of his son's world. His son has achieved stability, continuity and permanency with the only family he knows without input, support and contact from [the respondent]. . . . [Thus, the court concluded that] [t]he concept of parental abandonment set forth in . . . § 45a-717 (g) (2) (A) and applied in the circumstances of the instant case and the timing of this [termination of parental rights] trial comports with the statutory policies set forth [previously]." (Citations omitted.)

We conclude that the court properly found that the respondent abandoned Lukas. The court's finding that the respondent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of Lukas is supported by clear and convincing evidence. Thus, the respondent's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.