******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE MATTHEW P. ET AL.*
(AC 36562)

Lavine, Prescott and Lavery, Js.

*Argued September 22—officially released October 28, 2014***

(Appeal from Superior Court, judicial district of Middlesex, Child Protection Session, Hon. Thayer Baldwin, Jr., judge trial referee [mistrial]; Hon. Barbara M. Quinn, judge trial referee [judgments].)

*David J. Reich*, for the appellant (respondent mother).

*Jessica Gauvin*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

LAVERY, J. The respondent mother,[1] Charlene C., appeals from the judgments of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights as to her two children, M and P. On appeal, the respondent claims that the court's denial of her motion for a continuance constituted a violation of due process. We affirm the judgments of the court.

The following facts and procedural history, as found by the court, are relevant to this appeal. The respondent has struggled with substance abuse and mental illness since her early adolescence.[2] In June 2009, M was born to the respondent and Matthew P. In January, 2010, the Department of Children and Families (department) invoked a ninety-six hour administrative hold on behalf of M, removing him from the respondent's care for the first time. At that time, the respondent had been exhibiting out-of-control behaviors and was transported to the emergency room to receive medical treatment for being under the influence of narcotics. An ex parte order of temporary custody was subsequently granted. This order was sustained on January 29, 2010. On May 11, 2010, M was adjudicated neglected and committed to the care and custody of the petitioner.

Due to the respondent's progress with regard to her treatment and sobriety, the court granted the petitioner's motion to revoke the commitment of M on September 1, 2010. The court also entered an order of protective supervision for a period of six months. In November, 2010, P was born to the respondent and Paul A. Subsequently, the court granted the petitioner's motion to extend protective supervision of M until April, 2011.

Two months later, in June, 2011, both children were removed from the respondent's care by an order of temporary custody because the respondent and Paul A. appeared highly intoxicated at a train station with both children in their care. The respondent subsequently was charged with two counts of risk of injury to a minor. On September 6, 2011, the children were adjudicated neglected and committed to the care and custody of the petitioner. On September 20, 2011, the court granted the petitioner's motion to revoke commitment of the children. The court ordered protective supervision of the children for six months.

In January, 2012, the children were again adjudicated neglected and were committed to the care and custody of the petitioner because the respondent had been involved in a car accident in which P was unrestrained. Upon examination at the hospital, P exhibited dilated pupils and a decreased heart rate, consistent with secondary exposure to phencyclidine (PCP). The respondent was arrested for assault, risk of injury, and breach of peace. On July 9, 2012, the court granted the respon-

dent's motion to revoke commitment and ordered protective supervision for six months.

Six days later, on July 17, 2012, the department removed the children from the respondent's care due to her intoxication and incoherence. Subsequently, the court sustained the order of temporary custody. This removal marked M's fourth and P's third such commitment to the petitioner's custody.

In early August, 2012, the department placed the children in the custody of the respondent's sister, JAC, as a foster care provider. At that time, JAC was a participant in the department's young adolescent program. Within a month, JAC was overwhelmed by caring for M and P in addition to her own child. In September, 2012, the department removed M and P from JAC's home.[3]

On November 28, 2012, the petitioner filed petitions to terminate the respondent's parental rights. The petitions alleged that the department had made reasonable efforts to reunify the respondent with the children and that she was unable or unwilling to benefit from the reunification efforts. The petitions further alleged that the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in their lives. See General Statutes § 17a-112 (j) (3) (B).

A trial took place over three days in April, 2013. The court, *Hon. Thayer Baldwin, Jr.*, judge trial referee, consolidated for trial the petitioner's termination of parental rights petitions and a motion filed by the respondent to transfer guardianship of the children to JAC. After the trial had concluded, Judge Baldwin retired before rendering a decision, and the court, *Brown, J.*, declared a mistrial. The matter was transferred to the Child Protection Session in Middletown for a retrial of the petitions.

The second trial was held on December 5, 2013, and January 13, 2014. On the first day of trial, the respondent's counsel, Howard J. Wicker, orally moved the court for an open-ended continuance. Wicker indicated that his client was hospitalized due to a recurrence of an "eye infection or a facial infection" and, therefore, could not be present. The court, *Hon. Barbara M. Quinn*, judge trial referee, noted Wicker's objection to proceeding without the respondent but indicated that, considering the procedural history of this case, the trial would commence as scheduled. In light of the interests at stake, the court ordered that the respondent would be permitted to review the transcripts from the first day of trial with her attorney, and to call or recall any witnesses for direct or cross-examination when she was present in the courtroom. On the first day of trial, the

court admitted the petitioner's twenty-seven exhibits in full and heard testimony from Logan Green, a physician whom the court had ordered to evaluate the respondent, and four of the department's social workers: Elizabeth Hazelwood, Kelli Wright, Jerene Davis, and Kelly Stratton.

On the second day of trial, the respondent was present. The respondent had had approximately one month to review the transcripts from the first day of trial with her attorney. The petitioner called Chrichton Stewart, a department social work supervisor, to testify. The respondent then recalled Davis and Green for further cross-examination. Additionally, the respondent testified and presented two of her own witnesses: Deborah F., her former foster mother, and JAC.

Judge Quinn further found that from the most recent date that the respondent's children had been removed, in June, 2012, through the period of time when the termination of parental rights petitions were retried, she has "remain[ed] drug-addicted and has failed to address her serious mental health issues." As of January, 2014, the respondent had not completed a substance abuse treatment program or addressed her mental health. The court heard testimony that, as a result, the respondent has lost her housing and remains transient with no legal source of income. Pursuant to the order of temporary custody granted in July, 2012, the children presently remain in the care of the petitioner. Both children currently reside in the same pre-adoptive foster home.

On January 23, 2014, Judge Quinn issued a memorandum of decision terminating the respondent's parental rights.[4] The court found that the respondent has been provided with "[a]n extraordinary number of services," including outpatient services and, until recently, supportive housing. Having found that the petitioner had satisfied the necessary statutory factors to terminate the respondent's parental rights by clear and convincing evidence, the court concluded that the termination of the respondent's parental rights was in the children's best interest. See General Statutes § 17a-112; *In re Valerie D.*, 223 Conn. 492, 511, 613 A.2d 748 (1992). Thus, the court terminated the respondent's parental rights pursuant to § 17a-112 (j) (3) (B) for failing to achieve personal rehabilitation.[5] This appeal followed.

On appeal, the respondent claims that her due process rights were violated because Judge Quinn improperly denied her request for a continuance during the termination proceedings, which prevented her from being present on the first day of trial.[6] The respondent acknowledges that the court implemented procedures to enable her to examine witnesses on the second day of trial; however, the respondent argues that these procedural protections were constitutionally inadequate. We do not agree.

We begin our analysis by setting forth the applicable standard of review. "Ordinarily, we resolve claims concerning the denial of a motion for a continuance under the abuse of discretion standard. . . . The substance of the [respondent's] claim, however, concerns due process. We resolve due process claims pursuant to *Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)." (Citations omitted.) *In re Jaime S.*, 120 Conn. App. 712, 738, 994 A.2d 233 (2010), appeal dismissed, 300 Conn. 294, 12 A.3d 566 (2011) (certification improvidently granted). "[The] test [in *Mathews*] requires a consideration of the private interest that will be affected by the official action, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Internal quotation marks omitted.) *Giordano* v. *Giordano*, 39 Conn. App. 183, 194, 664 A.2d 1136 (1995). "Stated differently, we must determine if the private interest of the [respondent] in the companionship, love and control of the child is at risk of being erroneously terminated because of the lack of an adequate procedural safeguard that could be provided for [her] without disregarding the state's interest in the well-being of the child and the fiscal and administrative burden on the state." *In re Jaime S.*, supra, 738.

"Due process does not mandate full evidentiary hearings on all matters, and not all situations calling for procedural safeguards call for the same kind of procedure. . . . So long as the procedure afforded adequately protects the individual interests at stake, there is no reason to impose substantially greater burdens . . . under the guise of due process." (Citation omitted; internal quotation marks omitted.) *GMAC Mortgage Corp.* v. *Glenn*, 103 Conn. App. 264, 275, 931 A.2d 290 (2007). "The bottom-line question is whether the denial rendered the [proceeding] fundamentally unfair in view of the *Mathews* factors." *In re Shaquanna M.*, 61 Conn. App. 592, 606, 767 A.2d 155 (2001). Our balancing of the three *Mathews* factors leads us to the conclusion that the denial of the respondent's motion for a continuance did not render the termination proceeding fundamentally unfair.

The first *Mathews* factor concerns "the private interest that will be affected by the official action." *Mathews* v. *Eldridge*, supra, 424 U.S. 335. It is axiomatic that the respondent has a constitutionally protected interest in her parental rights. See, e.g., *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *In re Alison M.*, 127 Conn. App. 197, 220, 15 A.3d 194 (2011). The petitioner does not dispute that the respondent's interest in retaining her parental rights to her two

sons is constitutionally protected. Because a petition to terminate parental rights threatens this fundamental interest, the first *Mathews* factor weighs in favor of the respondent. See *In re Tremaine C.*, 117 Conn. App. 521, 530, 980 A.2d 317, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009).

The second *Mathews* factor concerns the risk of error regarding the loss of the respondent's parental rights occasioned by her absence from the first day of trial. In the present case, we must consider the risk of an erroneous deprivation of the respondent's interest, given the existing procedures, and the value, if any, of the additional safeguard of granting the requested continuance. See *Mathews* v. *Eldridge*, supra, 424 U.S. 335.

On appeal, the respondent claims that she was deprived of the opportunity to take part in and observe the first day of the termination proceedings. The respondent alleges that "[her] presence [at the first day of trial] was vital in order for her to properly participate in the trial." Specifically, the respondent claims that she did not receive a fair trial, and her due process rights were violated, because "there is at least a possibility that [she] could have provided some insight to help her attorney based on her observations at trial" had she been present on December 5, 2013. The respondent further claims that "the additional safeguard that the court should have allowed was determining how long [she] was expected to remain in the hospital and granting a continuance if that stay was short term."

The respondent also argues that in assessing the risk of erroneous deprivation in the present case, this court should consider the fact that she recalled two of the petitioner's witnesses on the second day of trial. The respondent claims that the present case is distinguishable from *In re Juvenile Appeal* (*Docket No. 10155*), 187 Conn. 431, 446 A.2d 808 (1982), because, unlike the incarcerated individual in that case, she availed herself of the opportunity to recall two witnesses for further cross-examination, therefore demonstrating her dissatisfaction with the procedural protections invoked by the court in her absence. Specifically, the respondent claims that the present case is distinguishable from cases involving the termination of an incarcerated individual's parental rights because she was not "expected to be unavailable for an extended period of time, but was merely temporarily hospitalized." We are not persuaded.

We conclude that the second *Mathews* factor weighs in favor of the petitioner for the following reasons. First, the respondent was on notice of the issues to be raised and the testimony to be presented at the second trial because she had already witnessed the entire trial that had commenced in April, 2013, before the mistrial was declared. Second, the respondent has failed to establish

exactly what assistance she might have provided her attorney had she been present at the first day of trial. We note that the respondent's counsel was present on the first day of trial and represented her interests during her absence. This court has stated that "[i]t is in the interest of justice to ensure that any parent caught in the throes of a termination proceeding be present, *or at least represented by counsel*, from the beginning of the hearing." (Emphasis added.) *In re Jonathan P.*, 23 Conn. App. 207, 212, 579 A.2d 587 (1990); see also *In re Lukas K.*, supra, 120 Conn. App. 475.[7] Accordingly, although the respondent was absent from the first day of the proceedings, her counsel was present and adequately protected her from the risk of an erroneous deprivation of her parental rights to her children. Third, our Supreme Court has found in similar instances that the specific procedures implemented by the court in the present matter were sufficient to protect the due process rights of a parent who was absent from a termination proceeding due to incarceration. See, e.g., *In re Juvenile Appeal* (*Docket No. 10155*), supra, 187 Conn. 436–37, 441 (holding that court's denial of motion for continuance did not deny incarcerated father's right to due process where he was provided with complete transcript of first day of termination proceeding). The petitioner correctly notes that "[t]he trial court provided [the respondent] with transcripts of the testimony from the first day of trial, over a month to review them with her trial counsel and the option to recall any of the [p]etitioner's witnesses." Finally, the respondent had the opportunity to present her own witnesses or recall any of the petitioner's five witnesses for cross-examination on the second day of trial when she was present. The respondent testified on her own behalf and chose to recall two of the petitioner's witnesses, Davis and Green, for further cross-examination. The respondent could have recalled the rest of the petitioner's witnesses who testified on the first day of trial for either direct or cross-examination, but she chose not to do so. Accordingly, we conclude, on the basis of this record, that the risk of an erroneous deprivation under these circumstances was very low.

The third factor of the *Mathews* balancing test concerns the government's interest in the termination proceeding, which is twofold. "First, the state has a fiscal and administrative interest in lessening the cost involved in termination proceedings. . . . Second, as parens patriae, the state is also interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child." (Citation omitted.) *In re Alexander V.*, 223 Conn. 557, 565, 613 A.2d 780 (1992).

The respondent argues that the third factor weighs in her favor because the burden on the government in granting the continuance would have been minimal. The respondent further argues that her temporary

unavailability while hospitalized is distinguishable from the indefinite unavailability of a parent who is incarcerated, and, therefore, "there would have been little burden on the state had the continuance been granted." We disagree.

First, "the state has a fiscal and administrative interest in lessening the cost involved in termination proceedings." *In re Alexander V.*, supra, 223 Conn. 565. In the present case, the state does not suggest that the fiscal and administrative costs of granting a continuance would have been prohibitive. In denying the respondent's motion for a continuance, however, the court noted the lack of alternative dates to reschedule the proceeding. Further, the respondent acknowledges that, at the time of the requested continuance, her counsel made no representation to the court indicating how long the respondent would be hospitalized. In light of the fact that all party representatives and the petitioner's witnesses were present on the first day of trial, we conclude that delaying the proceeding by granting the continuance would have resulted in the very economic and administrative burdens on resources considered by this prong. See *In re Candids E.*, 111 Conn. App. 210, 218, 958 A.2d 229 (2008).

Second, as parens patriae, the state is "interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected [children]." *In re Alexander V.*, supra, 223 Conn. 565. "This furthers the express public policy of this state to provide all of its children a safe, stable nurturing environment." *State* v. *Anonymous*, 179 Conn. 155, 171, 425 A.2d 939 (1979). "As the Appellate Court [has] correctly noted, [b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . . . Accordingly, we recognize that the state has a vital interest in expediting the termination proceedings . . . ." (Citation omitted; internal quotation marks omitted.) *In re Alexander V.*, supra, 565. Accordingly, we consider the state's interest, as parens patriae, in minimizing the delay that a continuance would occasion in promptly determining the children's uncertain future. See id.

The respondent urges this court to "only weigh the delay that the continuance itself would have caused" in assessing the third *Mathews* factor. We agree with the respondent that the mistrial was "not due to any fault of [hers]," and it is likely that "any delay [caused by a continuance] would have been short term, until the [respondent] was released from the hospital." In assessing this prong, however, we do not consider in isolation the delay that the requested continuance would have caused. Rather, we consider the delay that would result from granting the continuance in the context of the age and complexity of the termination proceedings, including, in the present case, the

undesirability of further delay given that the termination petitions had previously been tried in full.

"We have articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; *the age and complexity of the case*; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the [party's] personal responsibility for the timing of the request . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 801–802, 835 A.2d 977 (2003).

In the present case, the department's extensive involvement with these children weighs the third *Mathews* factor in favor of the petitioner. M, now age five, has been removed from the respondent's care on four separate occasions. Since his birth in 2010, there have been three instances where P has been removed from the respondent's care. During these removal periods, the children were placed in foster care. The respondent testified that she had abused an illegal substance, specifically, cocaine, as recently as two weeks before testifying. The state, as parens patriae, has a strong interest in promoting the type of stability and permanency in the lives of these two children that they undoubtedly deserve and need.

Additionally, the protracted nature of these termination proceedings is a factor to be considered in assessing the third prong of *Mathews*. In the present case, the termination petitions were previously tried in full over three days in April, 2013. Those proceedings concluded in a mistrial, however. Although the respondent is not at fault for the delay occasioned by the mistrial, the occurrence of a mistrial strengthens the state's interest in minimizing delays in the second trial. Delaying the matter by granting the continuance would have placed an unnecessary burden on the state's interest in providing permanency and stability to M and P. See *In re Candids E.*, supra, 111 Conn. App. 218–19. Therefore, the third prong of *Mathews* favors the petitioner.

After carefully considering the three factors of the *Mathews* balancing test, we conclude that, under these circumstances, the court's failure to grant the respondent a continuance did not violate her due process rights to be present at the termination proceedings. Accordingly, the court did not err in terminating the respondent's parental rights.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** October 28, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Paul A., the father of P, consented to the termination of his parental rights on November 4, 2013. In a memorandum of decision dated January 23, 2014, the court, *Hon. Barbara M. Quinn*, judge trial referee, terminated the parental rights of Matthew P., the father of M, on the ground of abandonment and no ongoing parent-child relationship. Neither father is a party to this appeal. Accordingly, we refer in this opinion to the respondent mother as the respondent.

[2] Specifically, the court, *Hon. Barbara M. Quinn*, judge trial referee, made the following factual findings: "[The respondent] is now twenty-seven years old and is the mother of the two children, [M and P]. She is the old[er] of two children born to her parents. She herself had an extensive history with [the department] as a child, due to her mother's substance abuse, incarceration and exposure to domestic violence. When she was [thirteen], guardianship was transferred to her grandmother, who suffered from alcoholism and had difficulty controlling [the respondent's] behaviors. [The respondent's] own use of illegal substances began a few years earlier, at age eleven. She has been in and out of substance abuse treatment since that time. She left [the department's] care at the age of [eighteen], but remained involved with adolescent services until she became [twenty-one]. She has a good relationship with her younger sister. . . .

"[The respondent] is a convicted felon and has many arrests and convictions in her record. She suffers from the combination of significant drug addiction and unsuccessfully treated mental health problems. [The] substances she has abused include alcohol, cocaine, heroin, PCP and marijuana." The court further found that the respondent has been diagnosed with "Mood Disorder NOS, Attention Deficit Hyperactivity Disorder, Conduct Disorder, Antisocial Personality Disorder, anxiety and depressive symptoms."

[3] Subsequently, on April 22, 2013, and on August 4, 2013, the respondent filed motions to transfer guardianship of the children to JAC. The court, *Hon. Barbara M. Quinn*, judge trial referee, denied both motions.

[4] The court also denied the respondent's motion to transfer guardianship to JAC. The respondent has not challenged this decision on appeal.

[5] General Statutes § 17a-112 (j) (3) (B) provides in relevant part: "[T]he child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[6] The record reveals that the respondent's trial counsel made an oral motion for a continuance, but did not formally allege a violation of the respondent's due process rights. Counsel for the petitioner, however, urged the court to employ procedural safeguards "to both balance these children's needs for permanency with mother's due process rights." The court responded by continuing with the proceedings, but provided that the respondent could call or recall any witnesses on the second day of trial. Accordingly, in enacting these procedural safeguards in the respondent's absence, it appears that the court treated the respondent's objection as alleging a deprivation of the constitutionally protected right to due process of law. Cf. *In re Lukas K.*, 120 Conn. App. 465, 471, 992 A.2d 1142 (2010), aff'd, 300 Conn. 463, 14 A.3d 990 (2011). Thus, we conclude that this constitutional issue was properly preserved for appellate review, and, accordingly, we proceed to evaluate the merits of the respondent's due process claim.

[7] The court in *Lukas* noted: "There can be, however, circumstances in a termination hearing in which the mere presence, alone, of a respondent's counsel, is not sufficient for a court to proceed in the respondent's absence."

(Internal quotation marks omitted.) *In re Lukas K.*, supra, 120 Conn. App. 475. This court has identified one such instance where the respondent was on his way to the courthouse after a writ of habeas corpus had been issued to ensure his presence at the hearing. See *In re Jonathan P.*, supra, 23 Conn. App. 212–13 (holding it would have been improper for court to proceed before respondent arrived, even if his counsel had been in courtroom at that time). We conclude that, in the present case, the presence of the respondent's counsel was sufficient for the court to proceed in the respondent's absence in light of the other procedural safeguards employed by the court.

———————————————————